SCOTT VOELZ (S.B. #181415)
svoelz@omm.com
PAUL A. HOLTON (S.B. #313047)
pholton@omm.com
ALLISON BADER (S.B. #324306)
abader@omm.com
JAMIE BUTTS (S.B. #346647)
jbutts@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
18th Floor
Los Angeles, California  90071-2899
Telephone:  +1 213 430 6000
Facsimile:    +1 213 430 6407

Attorneys for Defendant
*Walmart Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA SULLIVAN, JAVAL ASHLEY, and HILARIO GARCIA,<br><br>Plaintiffs,<br><br>v.<br><br>WALMART, INC., dba SPARK, and DOES 1 THROUGH 5, inclusive,<br><br>Defendants. | Case No. 2:24-cv-04540-GW-MAR<br><br>**DEFENDANT WALMART INC'S MOTION TO COMPEL ARBITRATION OF PLAINTIFFS' COMPLAINT**<br><br>Judge:       Hon. George H. Wu<br>Courtroom: 9D<br>Date:         July 8, 2024<br>Time:         8:30 a.m. |

## NOTICE OF MOTION AND MOTION

**TO PLAINTIFFS PAMELA SULLIVAN, JAVAL ASHLEY, AND HILARIO GARCIA, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on July 8, 2024, at 8:30 a.m., or as soon thereafter as this matter may be heard in the United States District Court for the Central District of California, located at 350 W. 1st Street, Courtroom 9D, Los Angeles, California 90012, Defendant Walmart Inc.[1] ("Walmart") will, and hereby does, move for an order compelling arbitration of Plaintiffs Pamela Sullivan, Javal Ashley, and Hilario Garcia's (collectively, "Plaintiffs") Complaint and staying this action on the grounds that there are valid, written arbitration agreements between Plaintiffs and Walmart.  Walmart brings this Motion pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 2, 3, & 4.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Ashley O'Brien filed concurrently herewith, the Declaration of Alonzo Cardenas filed concurrently herewith, all the pleadings, papers, and records on file herein, all matters on which judicial notice may be taken, any oral argument that may be presented at the hearing, and upon such other matters as this Court deems just and necessary.  Walmart brings this Motion following the conference of counsel pursuant to Local Rule 7-3, which took place on June 3, 2024.

---

[1] As captioned above, Plaintiffs' lawsuit names as the Defendant a single purported entity it calls "WALMART INC., dba SPARK."  Walmart Inc. is not "dba SPARK."

DEFENDANT WALMART INC'S MOTION
TO COMPEL ARBITRATION
2:24-CV-04540-GW-MAR

# TABLE OF CONTENTS

                                                                                                    **Page**

I.      INTRODUCTION ........................................................................................1

II.     FACTUAL BACKGROUND .......................................................................3

        A.      The Spark Driver App and Website.................................................3

        B.      The Parties.......................................................................................4

        C.      The TOU. .........................................................................................4

        D.      The Arbitration Agreement..............................................................5

III.    PROCEDURAL HISTORY .........................................................................6

IV.     THE COURT SHOULD COMPEL ARBITRATION OF PLAINTIFFS'
        CLAIMS ......................................................................................................8

        A.      The Agreement Is Governed By the FAA, Which Favors Arbitration..8

        B.      The FAA Does Not Exempt Plaintiffs From Arbitration. ...................9

        C.      Plaintiffs' Claims All Fall Within the Scope of the Agreement..........10

                1.      Plaintiffs' Claims Are Arbitrable. .............................................10

                2.      Plaintiffs' Requests For Equitable Relief Are Arbitrable. ........12

                3.      Any Question About the Scope of the Agreement to Arbitrate
                        Must Be Decided By an Arbitrator..............................................17

        D.      The Agreement Is Valid and Enforceable...........................................18

                1.      The Agreement Is Not Procedurally Unconscionable................19

                2.      The Agreement Is Not Substantively Unconscionable..............20

V.      THE COURT MUST STAY THIS ACTION PENDING COMPLETION OF
        THE ARBITRATION ..................................................................................21

VI.     CONCLUSION ...........................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ajzenman v. Off. of Comm'r of Baseball*,
No. CV203643DSFJEMX, 2020 WL 6037140 (C.D. Cal. Sept. 14,
2020) ................................................................................................. 2, 13, 14

*Allied-Bruce Terminix Cos., Inc. v. Dobson*,
513 U.S. 265 (1995) ..................................................................................... 9

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013) .................................................................................. 3, 9

*Amirani v. Arthur J. Gallagher Serv. Co., LLC*,
No. 8:20-cv-01526-MCS(DFMx), 2020 U.S. Dist. LEXIS 250014
(C.D. Cal. Dec. 28, 2020) .......................................................................... 23

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ..................................................................................... 3

*AT&T Techs., Inc., v. Commc'n Workers of Am.*,
475 U.S. 643 (1986) ................................................................................... 12

*Blair v. Superpedestrian HQ*,
No. 2:23-cv-02153-MCS-AGR, 2023 U.S. Dist. LEXIS 80426
(C.D. Cal. May 8, 2023) ........................................................................ 22, 24

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ..................................................................... 8

*Capriole v. Uber Techs., Inc.*,
7 F.4th 854 (9th Cir. 2021) ........................................................................ 17

*Chan Tang v. Bank of Am., N.A.*,
No. SACV 11-2048 DOC, 2012 WL 960373 (C.D. Cal. Mar. 19,
2012) ............................................................................................................ 7

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) ................................................................... 12

*Circuit City Stores, Inc. v. Adams*,
532 U.S. 105 (2001) ..................................................................................... 9

*Circuit City Stores, Inc. v. Ahmed*,
283 F.3d 1198 (9th Cir. 2002) ............................................................... 21, 23

*Circuit City Stores, Inc. v. Najd*,
294 F.3d 1104 (9th Cir. 2002) ................................................................... 21

*Clifford v. Quest Software, Inc.*,
38 Cal. App. 5th 745 (2019) ...................................................................... 19

DEFENDANT WALMART INC'S MOTION
TO COMPEL ARBITRATION
2:24-CV-04540-GW-MAR

# TABLE OF AUTHORITIES
(Continued)

**Page(s)**

*Cottrell v. AT&T Inc.*,
　No. 20-16162, 2021 WL 4963246 (9th Cir. 2021)................................17

*Dean Witter Reynolds, Inc. v. Byrd*,
　470 U.S. 213 (1985) ................................................................................21

*Dream Theater, Inc. v. Dream Theater*,
　124 Cal. App. 4th 547 (2004)..................................................................20

*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street*,
　35 Cal. 3d 312 (1983) ..............................................................................12

*Fernandez v. Bridgecrest Credit Co., LLC.*,
　No. 19-56378, 2022 WL 898593 (9th Cir. Mar. 28, 2022)................17

*Green Tree Fin. Corp.-Ala. V. Randolph*,
　531 U.S. 79 (2000) ..................................................................................10

*Grigorian v. Citibank, N.A.*,
　No. CV 23-9519-MWF (Ex), 2024 WL 2106944 (C.D. Cal. Apr. 17, 2024)..................................................................................................18

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
　139 S. Ct. 524 (2019) ..............................................................................20

*Hodges v. Comcast Cable Commc'ns, LLC*,
　21 F.4th 535 (9th Cir. 2021)...............................................................16, 17

*Johnson v. JP Morgan Chase Bank, N.A.*,
　No. EDCV172477JGBSPX, 2018 WL 4726042 (C.D. Cal. Sept. 18, 2018)........................................................................................................18

*Kilgore v. Keybank, Nat'l Ass'n*,
　718 F.3d 1052 (9th Cir. 2013)......................................................22, 23, 24

*Marlin v. Aimco Venezia, LLC*,
　154 Cal. App. 4th 154 (2007)....................................................................7

*Martinez v. Leslie's Poolmart, Inc.*,
　No. 8:14-CV-01481-CAS, 2014 WL 5604974 (C.D. Cal. Nov. 3, 2014)...........................................................................................................9

*McGill v. Citibank, N.A.*,
　2 Cal. 5th 945 (2017)...............................................................................14

*Meyer v. T Mobile USA Inc.*,
　836 F. Supp. 2d 994 (N.D. Cal. 2011).....................................................10

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**

*Mohamed v. Uber Techs., Inc.*,
  848 F.3d 1201 (9th Cir. 2016) ..................................................................22

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) .....................................................................................12

*Mundi v. Union Sec. Life Insur. Co.*,
  555 F.3d 1042 (9th Cir. 2009) ..................................................................21

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*,
  55 Cal. 4th 223 (2012) .......................................................................10, 24

*Rent-A-Center, West, Inc. v. Jackson*,
  561 U.S. 63 (2010) ...................................................................................20

*Sandquist v. Lebo Auto., Inc.*,
  1 Cal. 5th 233 (2016) ...............................................................................20

*Shelton v. Delivery Drivers, Inc.*,
  No. 8:22-cv-02135-DOC, 2023 WL 2629027 (C.D. Cal. Jan. 31,
  2023) ...................................................................................3, 11, 18, 19

*Simula, Inc. v. Autoliv, Inc.*,
  175 F.3d 716 (9th Cir. 1999) ......................................................................9

*Smith v. Spizzirri*,
  2024 WL 2193872 (U.S. May 16, 2024) ...................................................25

*Torrecillas v. Fitness Int'l*,
  52 Cal. App. 5th 485 (2020) .....................................................................19

*Walz v. Walmart Inc.*,
  Case No. 3:23-cv-06083-BHS, Dkt. #30 (W.D. Wash. June 6,
  2024) ..................................................................................................3, 11

**Statutes**

9 U.S.C. § 1 ......................................................................................................9

9 U.S.C. § 2 ...........................................................................................2, 8, 18

9 U.S.C. §§ 1-16 ..............................................................................................6

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

## I.     INTRODUCTION

3      The Spark Driver platform is an app-based delivery platform that allows

4   drivers to receive opportunities to deliver grocery and other general merchandise

5   from Walmart's (and other participating local retailers') stores to customers' homes.

6   As part of contracting with Walmart to provide these services, Plaintiffs Pamela

7   Sullivan ("Sullivan"), Hilario Garcia ("Garcia"), and Javal Ashley ("Ashley")

8   (collectively, "Plaintiffs") each entered into a Non-Disclosure and Dispute

9   Resolution Agreement with Defendant Walmart Inc. ("Walmart") (collectively, the

10   "Agreement").[2]  As Plaintiffs did not choose to opt out, the Agreement required

11   Plaintiffs to arbitrate "all disputes on an individual basis in final and binding

12   arbitration" relating to the services they provided using the "Spark Driver" platform.

13   (O'Brien Decl., Ex. C at 2.)

14      Plaintiffs have repeatedly failed to adhere to the Agreement.  They started by

15   filing a putative class action against Walmart.[3]  Then, after Walmart moved to compel

16   that action to individual arbitration, Plaintiffs tried to circumvent the Agreement by

17   amending their Complaint and doubling down on their alleged public injunction

18   claim.  Walmart then moved to compel the amended complaint to individual

19   arbitration, only to have Plaintiffs dismiss the prior action while the motion was

20   pending.

21

---

22   [2] The relevant provisions of the agreements acknowledged by Plaintiffs are identical.

23   (*See generally* Declaration of Ashley O'Brien ("O'Brien Decl."), Exs. A-C.)  Ashley subsequently acknowledged three separate updated versions of her agreement with

24   Walmart, each of which contained the same relevant provisions.  (*Id.*, Exs. D-F.)  As such, Walmart will refer to the relevant agreements as one singular "Agreement" and

25   cite only Sullivan's initial agreement in this Motion.

26   [3] As more thoroughly described in Walmart's Notice of Related Civil Case (*see* Dkt. #3), this action follows a largely duplicative action brought by Plaintiffs against

27   Walmart that Walmart removed to the Central District of California before Plaintiffs

28   dismissed the action without prejudice.

- 1 -

DEFENDANT WALMART INC'S MOTION
TO COMPEL ARBITRATION
2:24-CV-04540-GW-MAR

Plaintiffs now try to circumvent the Agreement again by filing a new lawsuit seeking injunctive relief focused on Walmart's communications with prospective and current drivers on the Spark Driver platform. For prospective drivers, Plaintiffs seek to compel Walmart to revise its Spark Driver website to either (a) clarify how drivers can generate additional earnings, the amount of potential additional earnings, and how those earnings are calculated, or (b) remove references to potential additional earnings from the Spark Driver website. For current drivers, Plaintiffs seek to force Walmart to revise its Spark Driver App to clarify how much potential additional earnings are available to a driver for a qualifying delivery. Plaintiffs frame this relief as being "solely for the benefit of the general public." But Plaintiffs' stylistic choices—*e.g.*, consistently repeating the phrase "the general public"—no more makes this a public injunction case than calling an apple an orange. *See Ajzenman v. Off. of Comm'r of Baseball*, No. CV203643DSFJEMX, 2020 WL 6037140, at *6 (C.D. Cal. Sept. 14, 2020) ("Courts do not take relief styled as 'public injunction' at face value."). Facts matter. Plaintiffs are not "the general public"—they are drivers who are interested in becoming or are currently authorized to use the Spark Driver platform. And the proposed injunction does not implicate Walmart's marketing of a good or service to the general public. Rather, it seeks to force Walmart to change how and what it communicates with a much smaller group of ***current and prospective drivers*** about contractual offers and details. Therefore, what Plaintiffs actually seek is a ***private*** injunction, which is relief that falls squarely within the Agreement and is therefore arbitrable.

The Federal Arbitration Act ("FAA") mandates that all arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . ." 9 U.S.C. § 2. The United States Supreme Court has consistently interpreted the FAA to favor the enforceability of arbitration agreements and has instructed that "[c]ourts must 'rigorously enforce'

arbitration agreements according to their terms . . . ." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (citation omitted); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (holding that arbitration agreements are "'valid, irrevocable, and enforceable' as written") (citation omitted).  In fact, just last year another court in the Central District of California compelled arbitration in a case that involved an arbitration agreement identical to the parties' Agreement here. *See Shelton v. Delivery Drivers, Inc.*, No. 8:22-cv-02135-DOC, 2023 WL 2629027, at *4 (C.D. Cal. Jan. 31, 2023).  Another court in the Ninth Circuit held similarly just a few days ago.  *Walz v. Walmart Inc.*, Case No. 3:23-cv-06083-BHS, Dkt. #30 at 18 (W.D. Wash. June 6, 2024)*.*  Because the parties here agreed to binding arbitration, which unquestionably covers all of the claims in the Complaint, this action should be compelled to arbitration, too.  (*See generally* O'Brien Decl., Ex. C.)  The Court also should stay the action pending the outcome of the arbitration.

## II.    FACTUAL BACKGROUND

### A.    The Spark Driver App and Website.

The "Spark Driver App" is "an app based delivery platform that allows independent contractor drivers to receive opportunities to deliver grocery and other general merchandise from Walmart's (and other participating local retailers') stores to nearby customers' homes." (O'Brien Decl., ¶ 3.)  Should someone want to become a driver using the Spark Driver platform, they can choose to visit a website, drive4spark.walmart.com, to learn about opportunities to provide pickup and delivery services using the Spark Driver App (the "Spark Driver website").  (*Id.*, ¶ 5.)  Only after potential drivers navigate to the Spark Driver website and begin the onboarding process can they then review contractual terms, including receiving information about how earnings are generated in exchange for the services drivers choose to provide through the Spark Driver App.  (*Id.*)  Thus, for example, the terms of the Walmart Spark Driver Mobile App Terms of Use ("TOU") are only provided

to potential drivers on the Spark Driver website once they have entered certain information necessary to begin onboarding on the Spark Driver platform (the review and acceptance of the TOU (among other documents) is one step in the process). (*Id.*)  Drivers cannot complete any trips on the Spark Driver App (and get paid for their services) until they review and accept the TOU.  (*Id.*)  The TOU is not made available to the general public on the Spark Driver website. (*Id.*)

### B.    The Parties.

Plaintiffs are independent contractors who contracted to provide delivery services using the Spark Driver platform.  Upon joining the Spark Driver platform, Ashley, Garcia, and Sullivan respectively signed the Agreement on May 10, 2022; June 6, 2022; and July 19, 2023. (O'Brien Decl., ¶¶ 7-8, 16, Exs. A-C, G-H.) Ashley subsequently acknowledged the Agreement three additional times—on June 16, 2022; July 5, 2022; and February 23, 2023.  (*Id.*, ¶ 15, Ex. G.)  In all such cases, the Agreement provided a mechanism to opt out of the arbitration provisions, but none of the Plaintiffs chose to do so.  (*Id.*, Exs. A-F.)

While choosing to provide delivery services through the Spark Driver App, all orders accepted by Sullivan, Ashley, and Garcia originated from California store locations in the Bakersfield, Los Angeles, and San Fernando areas, respectively, and were delivered to surrounding areas, with none crossing state lines. (Cardenas Decl., ¶ 9.)  Additionally, all items purchased by a customer for delivery by Plaintiffs came from a specific local store's inventory. (*Id.* ¶ 7.)  The purchased items were therefore taken off of the shelf of a particular store, packaged for delivery, and then delivered by Plaintiffs to the customer.  (*Id.*)

Walmart is a corporation incorporated in the State of Delaware with its principal place of business in Bentonville, Arkansas. (O'Brien Decl., ¶ 2.)

### C.    The TOU.

A driver who chooses to contract on the Spark Driver platform must agree to

comply with the TOU in order to access and use the platform.  (O'Brien Decl., Ex. I
at 2 ("If you violate or do not agree to these Terms of Use, then your access to and
use of the Spark App is unauthorized. . . .").)[4]

### D.    The Arbitration Agreement.

Through the Agreement, Plaintiffs and Walmart each agreed to resolve any
and all claims that either party may have against the other through arbitration:

- The Agreement is "**intended to apply to the resolution of all disputes
between the Parties, and requires all such disputes to be resolved on an
individual basis and only by an arbitrator through final and binding
arbitration and not by way of a court or jury trial**, nor a proceeding before
any other governmental body, and not by way of a class, collective, mass, or
representative action or proceeding."  (O'Brien Decl., Ex. C at 3 (emphasis in
original).)

- The Agreement "shall apply to **any and all disputes between the Parties
regardless of whether brought by Walmart against Contractor or by
Contractor against Walmart** . . ., including but not limited to: (1) **disputes
arising out of or related to this Agreement**; (2) disputes arising out of or
related to Contractor's classification as an independent contractor;
(3) disputes arising out of or related to the actual or any alleged relationship
between Contractor and Walmart, including termination of the relationship,
whether arising under federal, state, or local law; and (4) **disputes arising out
of or relating to Contractor's performance of Services**.  This Arbitration
Provision also applies, without limitation, to **disputes regarding . . . unfair
competition [or] compensation** . . . and all other federal, state, or local
statutory and legal claims . . . arising out of or relating to Contractor's

---

[4] Like the Agreement, Ashley acknowledged the TOU on multiple occasions.  The
relevant provisions of the TOU are substantially similar.  As such, Walmart will refer
to the TOU as a singular document and cite the TOU acknowledged by all Plaintiffs.

DEFENDANT WALMART INC'S MOTION
TO COMPEL ARBITRATION
2:24-CV-04540-GW-MAR

relationship with Walmart . . . ." (*Id.*, Ex. C at 3-4 (emphasis added).)

• "The Parties expressly agree that this Arbitration Provision is **governed exclusively by the Federal Arbitration Act**, 9 U.S.C. §§ 1-16 ('FAA'), and evidences a transaction involving commerce, and Contractor agrees that this is not a contract of employment involving any class of workers engaged in foreign or interstate commerce within the meaning of Section 1 of the FAA." (*Id.*, Ex. C at 2 (emphasis added).)

• The "Arbitration Provision is not a mandatory component of this Agreement or Contractor's contractual relationship with Walmart. If Contractor does not want to be subject to this Arbitration Provision, **Contractor may opt out** . . . ." (*Id.*, Ex. C at 5 (emphasis added).)

Accordingly, the Agreement clearly delineates the presence of an arbitration provision that, if the driver does not choose to opt out of it, mandates that "all disputes between the Parties" be resolved in final, binding arbitration. (*Id.*, Ex. C at 2-3.)

## III. PROCEDURAL HISTORY

On March 29, 2024, despite being bound by the Agreement to arbitrate, Plaintiffs sued Walmart in the Superior Court of California for a second time, alleging four causes of action under the Consumer Legal Remedies Act ("CLRA") (Claim One), the California Business and Professions Code ("UCL") (Claims Two and Three), and a standalone "request for injunction" (Claim 4).[5] (Dkt. #1-1, ¶¶ 14-32.) Plaintiffs' claims are ***entirely focused*** on how earnings of Plaintiffs and other independent contractors who deliver grocery and other general merchandise from

---

[5] While Plaintiffs title their standalone "request for injunction" as a "cause of action," it is merely a form of relief. It is therefore subject to dismissal. *See Chan Tang v. Bank of Am., N.A.*, No. SACV 11-2048 DOC, 2012 WL 960373, at *15 (C.D. Cal. Mar. 19, 2012) (dismissing "cause of action" for "injunctive relief" because "injunctive relief is a remedy, not a cause of action"); *Marlin v. Aimco Venezia, LLC*, 154 Cal. App. 4th 154, 162 (2007) ("An injunction is a remedy, not a cause of action.").

DEFENDANT WALMART INC'S MOTION
TO COMPEL ARBITRATION
2:24-CV-04540-GW-MAR

Walmart's (and other participating local retailers') stores to customers' homes through the Spark Driver platform are determined, and how Walmart communicates with drivers about their earnings. The underlying allegation is that Walmart made "representations in its online advertising that is [sic] pays extra on certain orders," which representations Plaintiffs allege are, among other things, "illusory and false," "deceptive," and "illegal, untrue, or misleading." (*Id.*, ¶¶ 15, 18, 23.)

To remedy these alleged wrongs, Plaintiffs seek "injunctive relief" containing two components. First, they seek an injunction requiring Walmart to "either (1) specifically explain in their advertising and their term [*sic*] and conditions what these extra bonuses are and how you earn them, or (2) cease all advertising referring to extra pay for certain driving jobs, such as larger orders or orders which require extra help from the driver." (*Id.*, Prayer for Relief, ¶ 1.) Notably, Walmart's "terms and conditions" that Plaintiffs seek to change via injunction are only accessible to drivers who are in the process of onboarding to the Spark Driver platform and are not available to the general public. Second, they seek an injunction mandating that Walmart disclose: "(1) how much extra pay drivers can earn for large or special orders; (2) generally, how this pay is calculated; (3) what are the specific sizes or types of orders which qualify for extra pay; and that (4) payments made to Spark drivers will indicate how much extra pay, if any, has been paid to a driver for each delivery." (*Id.* ¶¶ 16, 19.) This injunctive relief is, by Plaintiffs' own admission, all they seek: "Plaintiffs **do not seek any individual or class relief** in this case, and **do not seek any monetary relief for themselves or on behalf of any Spark drivers** . . .." (*Id.* ¶ 12 (emphasis added).)

On May 31, 2024, Walmart timely removed the action to this Court. (Dkt. #1.)

Because Plaintiffs' Complaint really seeks **private** injunctive relief concerning how offers are calculated and communicated to them through the Spark Driver website and how earnings are displayed on the Spark Driver App, their claims are

1   subject to arbitration under the Agreement.  Accordingly, Walmart moves to compel

2   arbitration with this Motion.

3   **IV.    THE COURT SHOULD COMPEL ARBITRATION OF PLAINTIFFS' CLAIMS**

4   

5       **A.    The Agreement Is Governed By the FAA, Which Favors Arbitration.**

6         The Agreement provides explicitly that it "is governed exclusively by the

7   [FAA]."  (O'Brien Decl., Ex. C at 2.)  The parties' choice of the FAA to govern their

8   Agreement is enforceable according to its terms.  *See Brennan v. Opus Bank*, 796

9   F.3d 1125, 1129 (9th Cir. 2015) ("For any arbitration agreement within the coverage

10  of the [FAA], [t]he court is to make th[e] [arbitrability] determination by applying

11  the  federal  substantive  law  of  arbitrability . . .  absent  clear  and  unmistakable

12  evidence that the parties agreed to apply non-federal arbitrability law.") (internal

13  quotations and citations omitted); *see also Martinez v. Leslie's Poolmart, Inc.*, No.

14  8:14-CV-01481-CAS, 2014 WL 5604974, at *3, n.4 (C.D. Cal. Nov. 3, 2014).

15        "The FAA embodies a clear federal policy in favor of arbitration[,]" *Simula,*

16  *Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999), and compels the enforcement

17  of a written arbitration agreement "evidencing a transaction involving commerce."[6]

18  9 U.S.C. § 2; *see also Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233

19  (2013) (The FAA "reflects the overarching principle that arbitration is a matter of

20  contract . . . .    And  consistent  with  [its]  text,  courts  must  'rigorously  enforce'

21  _____

22  [6] The term "commerce," as used in section 2 of the FAA, invokes a "full exercise of

23  constitutional power" and "signals an intent to exercise Congress' commerce power to the full."  *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 277 (1995).

24  Walmart is a national retailer incorporated in Delaware with its principal place of business based in Bentonville, Arkansas.  (O'Brien Decl., ¶ 2.)  Because Walmart

25  contracted  with  Plaintiffs,  independent  contractors  based  in  California,  the

26  Agreement involves interstate commerce.  Courts routinely hold that contracts between local individuals and institutions that do business in more than one state

27  involve "commerce" within the meaning of the FAA.  *See, e.g.*, *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109-10, 119 (2001) (FAA applies to contract between

28  local "sales counselor" and a "national retailer").

DEFENDANT WALMART INC'S MOTION
TO COMPEL ARBITRATION
2:24-CV-04540-GW-MAR

arbitration agreements according to their terms.") (internal citation omitted).  Thus, once the mere existence of an arbitration agreement is established—as it has been here—the party "resisting the arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Meyer v. T Mobile USA Inc.*, 836 F. Supp. 2d 994, 1000 (N.D. Cal. 2011) (quoting *Green Tree Fin. Corp.-Ala. V. Randolph*, 531 U.S. 79, 91 (2000)); *see also Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012).

### B.    The FAA Does Not Exempt Plaintiffs From Arbitration.

Section 1 of the FAA creates an exemption for seamen, railroad employees, and certain other transportation workers.  *See* 9 U.S.C. § 1 ("[N]othing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.")  But that exemption does not apply here.  Plaintiffs are not workers "engaged in foreign or interstate commerce" within the meaning of Section 1, and such a finding would conflict with the terms of the Agreement and applicable law.

First, the Agreement provides that Section 1 of the FAA is inapplicable here. Plaintiffs expressly agreed that they were not part of "any class of workers engaged in foreign or interstate commerce within the meaning of Section 1 of the FAA" and that "[t]he validity, interpretation, and enforcement of this Arbitration Provision [would] be governed by the FAA even if Claimant and/or Walmart are otherwise exempt from the FAA." (O'Brien Decl., Ex. C at 2.)  The Agreement must therefore be enforced according to its terms.

Second, several courts have found that the Section 1 exemption is inapplicable to drivers on the Spark Driver platform.  Last year, another court in this District compelled arbitration in a case that involved an arbitration agreement identical to the parties' Agreement here.  *See Shelton*, 2023 WL 2629027 at *1.  In deciding to compel arbitration, the *Shelton* court examined the relevant facts and found that the

DEFENDANT WALMART INC'S MOTION
TO COMPEL ARBITRATION
2:24-CV-04540-GW-MAR

exemption did not apply, ordered that the plaintiff's individual claims against Walmart be arbitrated, and dismissed the case. *Id.* at *3. And, just a few days ago, another federal district court in the Ninth Circuit compelled a plaintiff to arbitrate putative class claims pursuant to an arbitration agreement identical to the parties' Agreement here. *Walz v. Walmart Inc.*, Case No. 3:23-cv-06083-BHS, Dkt. #30 at 18 (W.D. Wash. June 6, 2024). In *Walz*, the court concluded the plaintiff, a driver who performed delivery services between local Walmart customers and their local Walmart stores on the Spark Driver platform, was not an exempt transportation worker because the transactions he engaged in were "intrastate in nature." *Id.* at 9, 14 ("Walz accordingly fails to establish that his contract with Walmart is exempt from the FAA under § 1.").

### C.    Plaintiffs' Claims All Fall Within the Scope of the Agreement.

#### 1.    Plaintiffs' Claims Are Arbitrable.

While the Court should not reach the issue of which claims are subject to arbitration (as explained in Section IV.C.3 below), as a factual matter, all of Plaintiffs' claims fall within the scope of the Agreement. The FAA embodies a clear policy "in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 (1983); *Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street*, 35 Cal. 3d 312, 320 (1983) ("[D]oubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (if the court determines that "a valid agreement to arbitrate exists" and that "the agreement encompasses the dispute at issue," the court must "enforce the arbitration agreement in accordance with its terms"). The broader the arbitration clause, the stronger the presumption in favor of arbitration. *AT&T Techs., Inc., v. Commc'n Workers of Am.*, 475 U.S. 643, 650

(1986).

Here, the scope of the Agreement is both broad and specifically encompasses Plaintiffs' claims against Walmart. Indeed, Plaintiffs' claims under the CLRA and UCL (Claims One, Two, and Three) allege that Walmart engaged in false advertising and unfair business practices by (1) "mak[ing] representations in its online advertising that is [*sic*] pays extra on certain orders"; and (2) making other advertisements that "are misleading and deceptive to all members of the public who view them and rely upon them to consider whether to apply to be a Spark driver." (Dkt. #1-1, ¶¶ 10, 15.) Plaintiffs seek relief in the forms of declaratory and injunctive relief under the UCL, as well as injunctive relief under the CLRA. (Dkt. #1-1, ¶¶ 16, 19, 27.) In addition to the relief Plaintiffs seek pursuant to their UCL and CLRA claims, Plaintiffs bring a standalone request (Claim Four) for a "preliminary and permanent injunction prohibiting [Walmart] from continuing to engage in unlawful acts" related to "unfair trade practices." (Dkt. #1-1, ¶¶ 29, 32.)

The Agreement plainly encompasses all of Plaintiffs' claims, stating that the arbitration provision "shall apply to any and all disputes between the Parties . . . including but not limited to . . . disputes arising out of or relating to Contractor's performance of Services." (O'Brien Decl., Ex. C at 3.) The Agreement "also applies, without limitation, to disputes regarding . . . unfair competition [or] compensation . . . and all other federal, state, or local statutory and legal claims . . . arising out of or relating to Contractor's relationship with Walmart . . . ." (*Id.* at 3-4.) Because these claims are based on alleged descriptions of drivers' earnings under a theory of unfair competition, they fall squarely within the Agreement, particularly since Plaintiffs' contractual relationship with Walmart governs how earnings are generated for services rendered. Thus, the plain language of the Agreement requires the Court to compel Plaintiffs' claims to arbitration.

DEFENDANT WALMART INC'S MOTION
TO COMPEL ARBITRATION
2:24-CV-04540-GW-MAR

### 2.    Plaintiffs' Requests For Equitable Relief Are Arbitrable.

Plaintiffs may contend that they have the right to seek any equitable relief under the UCL and CLRA in this Court, even if otherwise subject to a binding arbitration agreement.  But Plaintiffs' requested form of injunctive relief here must nevertheless be arbitrated individually.  (*See* Dkt. #1-1, ¶¶ 10-12.)

Plaintiffs repeatedly allege that they are seeking injunctive relief for "the general public."  (*See generally* Dkt. #1-1.)  But parroting this language does not make it so.  *See Ajzenman*, 2020 WL 6037140 at *6 ("Courts do not take relief styled as 'public injunction' at face value.").  Nor does framing the relief requested in a "vague, generalized allegation" that merely seeks "nothing more than is already required by law," *id*. at *6-7, such as Plaintiffs' request that Walmart be enjoined from "continuing to engage in the unlawful acts alleged" in Plaintiffs' Complaint. (Dkt. #1-1, ¶ 32.); *see also Ajzenman*, 2020 WL 6037140 at *6-7 ("Merely requesting relief which would generally enjoin a defendant from wrongdoing does not elevate requests for injunctive relief to requests for ***public*** injunctive relief.") (emphasis in original).  Rather, the California Supreme Court defines "public injunctive relief" as "injunctive relief that has the ***primary purpose*** and effect of prohibiting unlawful acts that threaten future injury ***to the general public***."  *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 951 (2017) (emphasis added).  "Private injunctive relief," on the other hand, is "relief that ***primarily 'resolve[s] a private dispute'*** between the parties . . . and 'rectif[ies] individual wrongs,' . . . and that benefits the public, if at all, only incidentally . . . ."  *Id.* at 955 (emphasis added).  Regardless of how the requested relief is characterized in the Complaint, Plaintiffs here actually seek ***private*** injunctive relief, which is arbitrable.

*McGill* is instructive on this public/private distinction.  There, the plaintiff opened a credit card account with Citibank, which advertised a "credit protector" plan to the general public.  *Id.* at 952.  In deciding to grant injunctive relief, the

DEFENDANT WALMART INC'S MOTION
TO COMPEL ARBITRATION
2:24-CV-04540-GW-MAR

California Supreme Court reasoned that such an order was "'designed to prevent further harm to the public at large,'" rather than having "the primary purpose or effect of redressing or preventing injury to an individual plaintiff—or to a group of individuals similarly situated to the plaintiff . . . ." *Id.* at 955.

Unlike in *McGill*, however, the statements Plaintiffs contend are misleading are not directed to the general public, but rather much more select groups—potential and active drivers using the Spark Driver App. The first category of statements that Plaintiffs' Complaint quarrels with are taken from the Spark Driver website, which provides information to those who are actively exploring the contractual opportunity to provide services using the Spark Driver App. Plaintiffs allege that these statements are harmful because they induce the "general public" into becoming drivers and because they can never be verified. (Dkt. #1-1, ¶¶ 10-11.) But as the Spark Driver website makes clear, not every member of the "general public" can contract to use the Spark Driver App. Indeed, only individuals who have proof of valid auto insurance, a valid driver's license, and pass a criminal and driving record background check (among other requirements), are even eligible to use the Spark Driver platform. (O'Brien Decl., ¶¶ 5, 12; Ex. I at 2-3.) And only those who satisfy these requirements, go through the process to contract, and accept the TOU can view and accept specific pickup and delivery offers through the Spark Driver App (including the offered earnings for the order and whether a particular offer includes components for things like a heavier package or apartment delivery) and receive earnings per the terms of the contract. (O'Brien Decl., ¶¶ 5, 12.) Therefore, even if the Spark Driver website was inaccurate or misleading regarding how it describes the earnings available for certain offers (which it is not), any injunction requiring Walmart to specifically disclose on the Spark Driver website precisely how Walmart calculates and provides offers to prospective drivers (including the variable value of the individual components of the trip offer) would only impact individuals who are

1    eligible to drive using the Spark Driver platform, not the general public.

2        The second aspect of Plaintiffs' requested injunction, seeking changes in how

3    Walmart displays potential earnings from individual trip offers to drivers on the

4    Spark Driver App, likewise does not impact the general public.    Specifically,

5    Plaintiffs ask Walmart to change the Spark Driver App to display what portion of the

6    base trip offer, if any, is attributable to aspects of the trip that may require extra effort

7    from the driver, such as heavy package or apartment deliveries.    That relief would

8    require Walmart to change the Spark Driver App display and itemize the variable

9    individualize components of each trip offer calculation.    But only **current** Spark

10    Drivers can receive these offers.    Such an injunction would consequently not be

11    directed to, and would have no effect on, the general public.

12        As several recent federal cases have held in analogous circumstances,

13    Plaintiffs actually seek a private injunction, which is subject to the arbitration

14    agreement.    In *Hodges v. Comcast Cable Communications, LLC*, the Ninth Circuit

15    held that a former cable subscriber's request under the UCL for an injunction of data

16    collection policies was private, rather than public in nature, and thus arbitrable.    21

17    F.4th 535, 544 (9th Cir. 2021).    There, pointing to *McGill*, the court rejected a broad

18    interpretation of public injunctive relief as "*any* forward-looking injunction that

19    restrains *any* unlawful conduct."    *Id.* (finding such definition inconsistent with "the

20    key features of public injunctive relief set forth by the state high court in *McGill*")

21    (emphasis in original).    Instead, the court reasoned that "the primary purpose" of

22    public injunctive relief is to prevent "future injury to the general public," as opposed

23    to "'redressing or preventing injury' to a person or group of persons . . . ."    *Id.* at 541-

24    42 (explaining that private injunctive relief "provides benefits 'to an individual

25    plaintiff—or to *a group of individuals similarly situated* to the plaintiff'") (emphasis

26    added).    Given that the plaintiff's requested "relief could [not] be said to *primarily*

27    benefit the general public," the fact that some of the plaintiff's requested forms of

28

DEFENDANT WALMART INC'S MOTION
TO COMPEL ARBITRATION
2:24-CV-04540-GW-MAR

relief were "forward-looking prohibitions against future violations of law," were "not enough to classify the remedy as public injunctive relief. . . ." *Id.* at 549 (emphasis in original); *see also id.* at 546 (affirming *McGill*'s reasoning that "an incidental public benefit from what is otherwise class-wide private injunctive relief is not sufficient to establish that the requested injunction is actually public relief").[7]  Here, like the injunction that stood to only benefit cable subscribers, Plaintiffs' requested relief—to require (a) Walmart to disclose how much additional earnings drivers can potentially earn for deliveries that may involve additional driver effort, and how those variable earnings are calculated and (b) disclose how it calculates trip offers for particular deliveries—only stands to impact Plaintiffs, and other drivers and prospective qualified drivers on the platform, not the general public.

Nor is *Hodges* an isolated holding.  *See Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 870-71 (9th Cir. 2021) (finding the "[p]laintiff's requested injunctive relief [was] not one for 'public injunctive relief'" because the request was "overwhelmingly directed at Plaintiffs and other rideshare drivers" who "would be the primary beneficiar[ies] of access to overtime and minimum wages laws"); *Cottrell v. AT&T Inc.*, No. 20-16162, 2021 WL 4963246, at *1-2 (9th Cir. Oct. 26, 2021) (holding a request to require AT&T to provide certain accountings and notices was a private injunction because the "beneficiaries of the injunction would be current and future [] customers . . . similarly situated to" the plaintiff, not the general public) (internal citations omitted); *Fernandez v. Bridgecrest Credit Co., LLC.*, No. 19-

---

[7] The *Hodges* court also had practical concerns with the requested injunction, noting that its implementation would require "the examination of the paperwork of each individual sale to determine whether the particular financing terms" subject to the relief were included.  (*Id.* at 545.)  Plaintiffs themselves admit the same problem is present here.  Plaintiffs allege, for example, that whether drivers' earnings are correct is "arbitrary" and "inconsistent."  (Dkt. #1-1, ¶ 10.)  Because these allegations do not indicate a universal problem common to all driver earnings, they call for the kind of individual analysis that *Hodges* disfavored in refusing to grant the requested injunction.

56378, 2022 WL 898593, at *1 (9th Cir. Mar. 28, 2022) (holding that an injunction preventing a lender from "transferring vehicles repossessed or surrendered in California to Las Vegas, Nevada for auction sale . . . cannot constitute public injunctive relief because it only stands to benefit customers whose vehicle purchase contracts are assigned to" that particular lender); *Grigorian v. Citibank, N.A.*, No. CV 23-9519-MWF (Ex), 2024 WL 2106944, *3 (C.D. Cal. Apr. 17, 2024) (holding that "enjoin[ing] Defendant from employing discriminatory policies against those of Armenian national origin and heritage" did not constitute public injunctive relief because "the requested relief is inherently limited to Plaintiff and other similarly situated individuals"); *Johnson v. JP Morgan Chase Bank, N.A.*, No. EDCV172477JGBSPX, 2018 WL 4726042, at *7 (C.D. Cal. Sept. 18, 2018) (holding despite the plaintiffs' express request for "a general injunction and public injunctive relief, a closer inspection reveal[ed] that the relief sought [was] actually intended to redress and prevent further injury" to plaintiffs who had already been injured).

Indeed, in *Shelton,* involving the same arbitration agreement at issue here, the plaintiff likewise sought, among other relief, an injunction under her UCL claim premised in part on a "failure to pay Class members wages and compensation they earned through labor." *See Shelton v. Delivery Drivers, Inc.*, No. 8:22-cv-02135, Dkt. # 1, Ex. A, at 20. The requested injunction was pursued "on behalf of [plaintiff] and all others similarly situated and also on behalf of the *general public* . . . enjoining Defendants from further unfair and unlawful business practices in violation of Business and Professions Code §§ 17200 *et seq*." *Id.* (emphasis added). The *Shelton* court nevertheless compelled the entire case, including the UCL claim with its proposed injunctive relief, to arbitration.

California courts have made similar holdings. *See Clifford v. Quest Software, Inc.*, 38 Cal. App. 5th 745, 755 (2019) (finding the plaintiff's request for injunctive relief under the UCL was not a public injunction, and thus was arbitrable, because

"any incidental benefit to the public from ensuring [the defendant's] compliance with wage and hour laws do not transform the [plaintiff's] private UCL injunctive relief claim into a public one under the definitions of public and private relief articulated in . . . *McGill*"); *Torrecillas v. Fitness Int'l*, 52 Cal. App. 5th 485, 499 (2020) (holding a plaintiff's requested injunction to "prohibit[] [the defendant] from 'continuing to engage in the practices described above'" was "private in nature," and thus arbitrable, because the injunction was aimed at stopping the defendant from failing to pay the plaintiff correctly).[8]

### 3. Any Question About the Scope of the Agreement to Arbitrate Must Be Decided By an Arbitrator.

For all of the foregoing reasons, there can be no dispute that Plaintiffs' claims are covered by the Agreement and should be compelled to arbitration. But even if that were not the case, an arbitrator—and not the Court—should resolve any question of the scope of the claims covered. The Agreement includes an explicit delegation clause, which states that "[o]nly an arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute arising out of or relating to the interpretation, applicability, enforceability, or formation of [the] Arbitration Provision, including without limitation any dispute concerning arbitrability." (O'Brien Decl., Ex. C at 4.) Where, as here, an arbitration agreement delegates to the arbitrator disputes about arbitrability, including disputes about the existence, scope, or validity of the arbitration agreement, a court must refer the matter to arbitration, irrespective of its views on these issues. As the Supreme Court held unanimously:

> [W]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the

---

[8] Likewise here, Plaintiffs are *not* similarly situated to members of the general public. Their requested relief seeks to require Walmart to provide details of how Walmart calculates the trip offers it makes to drivers using the Spark Driver App. The general public, by contrast, would never see this detailed information.

DEFENDANT WALMART INC'S MOTION
TO COMPEL ARBITRATION
2:24-CV-04540-GW-MAR

contract. In those circumstances, a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless.

*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). "[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) (finding agreement vested arbitrator with exclusive authority to resolve disputes relating to interpretation, applicability, and enforceability of arbitration agreement); *see also Sandquist v. Lebo Auto., Inc.*, 1 Cal. 5th 233, 243 (2016) ("'[W]ho decides' [issues of arbitrability] is a matter of party agreement."); *Dream Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547, 551, 558 (2004) (noting that who decides arbitrability depends on the parties' contract and compelling arbitration of gateway issues). Thus, if there is any question about whether Plaintiffs' claims are encompassed by the Agreement (there is not), that issue should be reserved for an arbitrator—not the Court.

### D.    The Agreement Is Valid and Enforceable.

Under the FAA, an arbitration agreement must be enforced "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985) ("The preeminent concern of Congress in passing the [FAA] was to . . . rigorously enforce agreements to arbitrate. . . ."). To determine whether an arbitration agreement is valid and enforceable, courts "apply 'general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration.'" *Mundi v. Union Sec. Life Insur. Co.*, 555 F.3d 1042, 1043 (9th Cir. 2009).

To establish unconscionability under California law, a plaintiff must prove that

the agreement is *both* procedurally and substantively unconscionable. *See Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002); *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002); *Kilgore v. Keybank, Nat'l Ass'n*, 718 F.3d 1052, 1057 (9th Cir. 2013) (en banc). The Agreement is neither procedurally nor substantively unconscionable, much less both.

### 1.    The Agreement Is Not Procedurally Unconscionable.

Procedural unconscionability focuses on "oppression" or "surprise" resulting from unequal bargaining power. *Kilgore*, 718 F.3d at 1059. Neither is present here.

As an initial matter, the Agreement is procedurally sound because Plaintiffs had the choice to opt-out of it. *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016) ("[A]n arbitration agreement is not adhesive if there is an opportunity to opt out of it . . . ."); *Blair v. Superpedestrian HQ*, No. 2:23-cv-02153-MCS-AGR, 2023 U.S. Dist. LEXIS 80426, at *15 (C.D. Cal. May 8, 2023) (finding an agreement that provided the plaintiff an opportunity to opt out and included instructions for doing so was not procedurally unconscionable). Indeed, agreeing to arbitration is not a required condition for using the Spark Driver platform and providing services under its terms of use. The Agreement provides that the "[a]rbitration [p]rovision is not a mandatory component of [the] Agreement or Contractor's contractual relationship with Walmart. **If [the] Contractor does not want to be subject to this [a]rbitration [p]rovision, [the] Contractor may opt out** . . . ." (O'Brien Decl., Ex. C at 5 (emphasis added).) Plaintiffs were presented with an opportunity to opt out and were provided with a clear procedure for doing so— "by notifying Walmart in writing of [their] desire to opt out of [the arbitration provision] within 30 days of [their] execution of [the] Agreement . . . ." (*Id.*) They chose not to do so. (*See id.*)

Moreover, the clear headings contained in the Agreement do not support a procedural unconscionability argument. *See Kilgore*, 718 F.3d at 1059 (arbitration

provision not procedurally unconscionable because "the arbitration clause [was not] buried in fine print . . . but was instead in its own section, clearly labeled, in boldface"). Here, both the arbitration provision and right to opt out appear in bolded lettering, in separately delineated sections, and explain the operative terms of arbitration and the opportunity to opt out. (O'Brien Decl., Ex. C at 2-4.) In fact, on the first page of the Agreement, Plaintiffs were advised in large, bolded font to "**Please review this Agreement carefully**" as the Agreement included an "**Arbitration Provision in Section II below**." (*Id.* (emphasis in original).)

Finally, the Agreement advised Plaintiffs that they were "free to seek assistance or advice from an advisor . . . before entering into the Agreement . . . ." (O'Brien Decl., Ex. C at 2.) When signing the Agreement, Plaintiffs also acknowledged that they "**read, understood, and considered** the consequences of the Agreement." (*Id.*, Ex. C at 5 (emphasis added).) The Agreement is thus not procedurally unconscionable, negating any unconscionability defense.

### 2.    The Agreement Is Not Substantively Unconscionable.

Even if Plaintiffs could show procedural unconscionability (they cannot), they must ***also*** show that the Agreement is substantively unconscionable. *See Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1200 (9th Cir. 2002) (refusing to reach substantive unconscionability argument once procedural unconscionability argument failed); *see also Amirani v. Arthur J. Gallagher Serv. Co., LLC*, No. 8:20-cv-01526-MCS(DFMx), 2020 U.S. Dist. LEXIS 250014, at *11 (C.D. Cal. Dec. 28, 2020) (following *Ahmed* by declining to analyze substantive unconscionability). Substantive unconscionability concerns "overly harsh" or "one-sided[]" terms. *Kilgore*, 718 F.3d at 1058.

The Agreement is not substantively unconscionable. It provides both sides with the same benefit of quicker, more cost-effective resolutions of any disputes between them. (*See generally* O'Brien Decl., Ex. C.) Thus, there are no "one-sided"

DEFENDANT WALMART INC'S MOTION
TO COMPEL ARBITRATION
2:24-CV-04540-GW-MAR

arbitration provisions in the Agreement.  It also imposes no undue hardship on Plaintiffs.  There are no limitations of remedies or damages, nor any one-sided limitations.  *See Blair v. Superpedestrian HQ*, No. 2:23-cv-02153-MCS-AGR, 2023 U.S. Dist. LEXIS 80426, at *16 (C.D. Cal. May 8, 2023) (finding no unconscionability where a "disputed arbitration agreement binds both Plaintiff and Defendant and does not include any restrictions that would unfairly favor one side"). Plaintiffs may recover any remedies they could individually recover in a court of law, including attorneys' fees and costs, if the law so allows.  (*See* O'Brien Decl., Ex. C.) The Agreement is therefore not substantively unconscionable.  And even if the Agreement had some amount of substantive unconscionability (it does not), it does not have the high degree of substantive unconscionability required to decline its enforcement.  *See Pinnacle Museum Tower Ass'n. v. Pinnacle Market Dev. (US), LLC*, 55 Cal. 4th 223, 246 (2012) (to be substantively unconscionable, a "term must be 'so one-sided as to shock the conscience.'").

## V.    THE COURT MUST STAY THIS ACTION PENDING COMPLETION OF THE ARBITRATION

This action must be stayed pending the completion of arbitration, as provided by federal law and the parties' Agreement.  *See Smith v. Spizzirri*, No. 22-1218, 2024 WL 2193872, at *4 (U.S. May 16, 2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding."); O'Brien Decl., Ex. C at 3 ("Contractor agrees that any representative claim . . . must be stayed pending arbitration of . . . any claim that Contractor brings on its own behalf for individualized relief.").

## VI.    CONCLUSION

For these reasons, Walmart respectfully requests that this Court grant its motion to compel Plaintiffs' claims to individual arbitration and stay the action

1   pending the completion of arbitration.

2          The undersigned counsel of record for Walmart Inc., certifies that this brief

3   contains 6,990 words, which complies with the word limit of L.R. 11-6.1.

4

5          Dated: June 10, 2024                    SCOTT VOELZ
                                                     PAUL A. HOLTON
6                                                    ALLISON BADER
                                                     JAMIE BUTTS
7                                                    O'MELVENY & MYERS LLP

8

9                                                    By:   */s/ Scott Voelz*
                                                                 Scott Voelz
10                                                   Attorneys for Defendant Walmart Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 22 -